**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**EUCLIDES MARQUEZ AMPUERO,**

                              **Petitioner,**

   **vs.**                                          **9:26-CV-1267**
                                                    **(MAD)**

**DAVID VENTURELLA, MARKWAYNE MULLIN,**
**TODD BLANCHE, and PHILIP RHONEY,**
*in their official capacities*,

                              **Respondents.**

---

**APPEARANCES:**                         **OF COUNSEL:**

**LAW OFFICE OF KATHY MANLEY**           **KATHY E. MANLEY, ESQ.**
26 Dinmore Road
Selkirk, New York 12158
Attorney for Petitioner

**OFFICE OF THE UNITED**                 **ALEXIS M. OSBORNE, AUSA**
**STATES ATTORNEY**
445 Broadway, Room 218
Albany, New York 12207
Attorney for Respondents

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On June 19, 2026, Euclides Marquez Ampuero ("Petitioner"), through counsel, filed a

petition for writ of habeas corpus. *See* Dkt. No. 1. The petition alleges that United States

Immigration and Customs Enforcement ("ICE") illegally detained Petitioner, who is a citizen of

1

Peru, during a traffic stop in Clifton Park, New York.[1]  *See id.* at 2, ¶¶ 1-2.[2]  Petitioner seeks immediate release under the Immigration and Nationality Act, Administrative Procedure Act, and the Fourth and Fifth Amendments to the United States Constitution.  *See id.* at 12-15, ¶¶ 30-46. Alternatively, Petitioner seeks a bond hearing.  *See id.* at 16.

On July 2, 2026, David Venturella, Acting Director of ICE; Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"); Todd Blanche, Acting Attorney General of the United States; and Philip Rhoney, Acting Director of ICE's Buffalo Field Office (collectively, "Respondents") filed a letter responding to the petition.  *See* Dkt. No. 7.  Respondents dispute the statutory authority for Petitioner's detention and argue that, even if the Court grants the petition, a bond hearing is the appropriate form of relief, rather than immediate release.  *See id.* at 1-4. Petitioner filed a reply on July 7, 2026.  *See* Dkt. No. 8.

## II. BACKGROUND

The parties do not dispute that Petitioner was detained during a traffic stop in the Northern District of New York on June 19, 2026, *see* Dkt. No. 1 at 2, ¶ 2; Dkt. No. 7 at 2, or that he is a citizen of Peru who entered the United States without authorization on or about July 30, 2022, *see* Dkt. No. 1 at 2, ¶ 1; Dkt. No. 7 at 1.  While the petition contains few facts about Petitioner's background and the circumstances leading up to the June 2026 arrest, Respondent's letter and supporting documentation offer additional information.

According to Respondents, Border Patrol agents encountered Petitioner on August 1, 2022, approximately two days after he entered the country.  *See* Dkt. No. 7 at 1.  An attached

---

[1] Respondents state that the traffic stop occurred in Schenectady, New York.  *See* Dkt. No. 7 at 2. Both locations are within the Northern District of New York.  *See* 28 U.S.C. § 112(a).

[2] Paragraph numbering restarts in the middle of the petition.  For clarity, the Court specifies both the page and paragraph numbers of the cited portions.

DHS record states the encounter happened on July 30, 2022, the day he entered the country. *See* Dkt. No. 7-2 at 2. After Petitioner was apprehended, he expressed a fear of returning to Peru. *See* Dkt. No. 7 at 2. On August 2, 2022, before any meeting with an asylum officer occurred, Petitioner was released from custody because the Government determined "he was at heightened risk of severe illness or death from COVID-19." *Id.*; *see* Dkt. No. 7-3. He was granted one year of discretionary parole and "instructed to report to the Albany ICE office for issuance of a Notice to Appear." Dkt. No. 7 at 2; *see* Dkt. No. 7-4. In November 2022, Petitioner was served with the notice to appear and was released on an order of recognizance while his immigration proceedings were pending. *See* Dkt. No. 7 at 2; Dkt. Nos. 7-5, 7-6. Respondents' letter does not mention whether Petitioner has any criminal history, but a DHS document submitted with the letter indicates that, as of November 2022, he had no criminal history. *See* Dkt. No. 7-2 at 1-2.

The parties agree that Petitioner was ordered removed from the United States in September 2025, which he appealed on October 2, 2025, and the appeal remains pending. *See* Dkt. No. 1 at 5, ¶ 1; Dkt. No. 7 at 2; Dkt. No. 7-9 at 3; Dkt. Nos. 7-7, 7-8. Respondents do not contest the propriety of the appeal. *See* Dkt. No. 7 at 2. Nevertheless, they claim that ICE agents "took Petitioner into custody [on June 19, 2026,] based on the existence of an outstanding final order of removal." *Id.*; *see also* Dkt. No. 7-9 at 1 ("[Petitioner] was arrested due to the lacking lawful status in the United States"). Respondent provides a copy of a warrant purportedly authorizing Petitioner's arrest. *See* Dkt. No. 7-10 (identifying "the pendency of ongoing removal proceedings against [Petitioner]" as the basis for his arrest). Petitioner contests the legitimacy of the warrant, arguing that it was issued after Petitioner was arrested. *See* Dkt. No. 8 at 1-2 (representing that Petitioner "was detained at some point before 11:00 A.M. on June 19") (emphasis removed); *see also* Dkt. No. 7-9 at 2 (DHS Record of Deportable/Inadmissible Alien

3

indicating that Petitioner was served with the warrant after he was arrested); Dkt. No. 7-10 at 1 (DHS Warrant for Arrest of Alien showing that the warrant was electronically signed at 11:54 A.M. on June 19, 2026).

### III. DISCUSSION

**A.    Legal Standard**

A district court may "grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Veletanga v. Noem*, No. 25-CV-9211, 2025 WL 3751865, *2 (S.D.N.Y. Dec. 26, 2025) (quoting *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003), *superseded by statute on other grounds*, 8 U.S.C. § 1252(a)(4)); *see* 28 U.S.C. § 2241(c)(3). "This jurisdiction includes habeas petitions filed by immigration detainees[,]" *Padilla Molina v. DeLeon*, No. 25-CV-6526, 2025 WL 3718728, *2 (E.D.N.Y. Dec. 23, 2025) (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020)), including non-citizens, *see R.P.L. v. Maldonado*, 814 F. Supp. 3d 301, 304 (E.D.N.Y. 2025).

"'[T]he petitioner "bears the burden of proving that he is being held contrary to law[,] and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence."'" *Veletanga*, 2025 WL 3751865, at *2 (quoting *Dzhabrailov v. Decker*, No. 20-CV-3118, 2020 WL 2731966, *3 (S.D.N.Y. May 26, 2020)); *see Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

**B.    Statutory Authority for Petitioner's Detention**

The parties dispute the statutory authority for Petitioner's detention.  Petitioner argues that 8 U.S.C. § 1226 applies.  *See* Dkt. No. 1 at 13, ¶ 33.  That provision states, in relevant part: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.  8 U.S.C. § 1226(a).  "[D]etention

under § 1226(a) is discretionary[,]" *Gaspar v. Akshar*, No. 9:26-CV-118, 2026 WL 699369, \*4 (N.D.N.Y. Feb. 17, 2026) (citing *Tumba v. Francis*, 813 F. Supp. 3d 394, 399 (S.D.N.Y. 2025)); *see Barbosa da Cunha v. Freden*, 175 F.4th 61, 72 (2d Cir. 2026), and that provision "allows a noncitizen to 'request a bond hearing before an immigration judge,'" *Hassan v. Bondi*, No. 9:26-CV-319, 2026 WL 891602, \*2 (N.D.N.Y. Apr. 1, 2026) (quoting *O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 400 (E.D.N.Y. 2025)).

Respondents argue that 8 U.S.C. § 1225(b)(2)(A) applies. *See* Dkt. No. 7 at 1-3. That provision states, in relevant part: "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Under that section, detention is mandatory. *See Hassan*, 2026 WL 891602, at \*2 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018)). Respondents do not contend that the order of removal or subsequent appeal dictate the applicable statutory authority.[3]

The Second Circuit recently determined that § 1226 "plainly applies to noncitizens . . . who are present in the United States, but charged as inadmissible for entering the country without inspection and admission." *Barbosa da Cunha*, 175 F.4th at 73. On the other hand, § 1225(b)(2)(A) "applies only to a noncitizen who is both an 'applicant for admission' and who is 'seeking admission.'" *Id.* at 74. The Second Circuit has recognized that these terms are not

---

[3] In some circumstances, entry of an order of removal mandates detention under 8 U.S.C. § 1231. *See De Moura ex rel. Ferreira v. Warden, Broome Cnty. Corr. Facility*, No. 9:26-CV-449, 2026 WL 1705979, \*3-4 (N.D.N.Y. June 12, 2026). Respondents do not make this argument. As explained herein, Petitioner's appeal of the order of removal makes it non-final and does not mandate detention under 8 U.S.C. § 1231. *See Colindres v. Tellez*, No. 26-CV-663, 2026 WL 509493, \*2 (E.D.N.Y. Feb. 23, 2026).

synonymous.  It construed "applicant for admission" to mean a "noncitizen[] who [is] present [in the United States] and [has] not been admitted."  *Id.*  In contrast, it construed "seeking admission" as referring to a noncitizen's requests for "inspection and authorization" if he is not yet physically present in the United States but wishes to enter.  *Id.*  According to the Second Circuit, a noncitizen who is present in the United States may be an applicant for admission, but is not seeking admission.  *See id.*  "[B]ecause Section 1225(b)(2)(A) applies only to a noncitizen who is both an 'applicant for admission' and 'seeking admission,'" it does not apply to petitioners in this Circuit who are already inside the United States.  *Id.* (citation omitted).

Respondents attempt to distinguish *Barbosa da Cunha* on factual grounds, citing Petitioner's apprehension in 2022 and COVID-related parole.  *See* Dkt. No. 7 at 2-3.  This Court has previously addressed the issue of whether a petitioner's parole into the United States means the individual is no longer "seeking" admission.  *See Martins v. Akshar*, No. 9:26-CV-95 (N.D.N.Y. Feb. 3, 2026), Dkt. No. 16, at 5-11; *Hernandez Villasmil v. Blanche*, No. 9:26-CV-713, 2026 WL 1235068, *6 (N.D.N.Y. May 5, 2026).  The Court answered "yes" to this question in *Hernandez Villasmil*, holding that the detention of a petitioner who was granted humanitarian parole and subsequently re-arrested after the parole ended is governed by § 1226(a).  *See Hernandez Villasmil*, 2026 WL 1235068, at *6.  Likewise, in *Martins*, the Court acknowledged Supreme Court authority suggesting that individuals detained upon entry and later paroled into the United States retain the same limited constitutional rights as noncitizens stopped at the border. *See Martins*, No. 9:26-CV-95 (N.D.N.Y. Feb. 3, 2026), Dkt. No. 16, at 10-11 (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020); *Shaughnessy v. United States ex rel. v. Mezei*, 345 U.S. 206, 215-16 (1953)).  The Court noted that this jurisprudence turns on case-specific national security concerns.  *See id.* at 11.

Relatedly, courts in this Circuit have concluded that, "where a petitioner's re-arrest was *not* a continuation of the initial border encounter, but an independent decision to detain the individual after the expiration of his parole, the detention pursuant to that re-arrest arises under § 1226." *Ivonin v. Rhoney*, No. 6:25-CV-6673, 2026 WL 199283, *4 (W.D.N.Y. Jan. 26, 2026) (citing *Campbell v. Almodovar*, No. 1:25-CV-9509, 2025 WL 3538351, *6 (S.D.N.Y. Dec. 10, 2025)); *see also Hernandez Villasmil*, 2026 WL 1235068, at *6 ("Petitioner, who was released into the United States on his own recognizance under humanitarian parole in 2023 and continued to reside in the United States for one year after his parole had been terminated, cannot be said to be 'seeking admission.'  Therefore, he is not subject to mandatory detention pursuant to § 1225(b)(2)(A) and his detention falls under the discretionary provision of § 1226(a)"); *Torrez Arce v. Blanche*, No. 9:26-CV-501, 2026 WL 1430509, *1-4 (N.D.N.Y. May 21, 2026) ("The Court therefore concludes that Petitioner, who was paroled into the United States approximately two years before his arrest, was not seeking admission when he was arrested, and Section 1225(b)(2)(A) therefore does not apply").

Petitioner is not a new arrival to the United States; he has been here for approximately four years.  Since the expiration of the parole period, he has lived in the United States for approximately three years.  *See* Dkt. No. 7-4 at 1 (indicating that Petitioner's parole would expire in August 2023).  Aside from referencing the order of removal, which is still being adjudicated on appeal, Respondents have not shown that Petitioner's re-detainment on June 19, 2026, was a continuation of his initial border encounter nearly four years earlier.  *See* Dkt. No. 7 at 2.  As the Western District of New York has noted, a noncitizen's entitlement to remain in the country indefinitely is distinct from the opportunity to be free from custody while his immigration proceedings are ongoing.  *See Cabrera Martinez v. Marich*, 816 F. Supp. 3d 356, 368 (W.D.N.Y.

2025) (citing *Campbell*, 2025 WL 3538351, at \*8). Section 1226 contemplates the latter. *See* 8 U.S.C. § 1226(a) ("[A]n alien *may be* arrested and detained pending a decision on whether the alien is to be removed from the United States . . .") (emphasis added).

Accordingly, the Court finds that § 1226 applies in this case.

**C.    Merits of the Petition**

To evaluate whether a petitioner's detention violates due process, courts analyze the following factors:

> (1) "the private interest that will be affected by the official action";
> (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Hernandez Villasmil*, 2026 WL 1235068, at \*8 (quoting *Black v. Decker*, 103 F.4th 133, 151 (2d Cir. 2024)); *see also Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Although Petitioner was ordered removed in September 2025, he has exercised his right to appeal that decision, and the appeal is pending. *See* Dkt. No. 7-8; Dkt. No. 7-9 at 3. Thus, the order of removal is not yet final and does not justify Petitioner's detention. *See* 8 C.F.R. § 1241.1(a) (noting that an order of removal becomes final when, *inter alia*, the Board of Immigration Appeals dismisses an appeal); *Colindres v. Tellez*, No. 26-CV-663, 2026 WL 509493, \*2-3 (E.D.N.Y. Feb. 23, 2026) (determining that the petitioner's appeal of a removal order rendered it non-final and ordering his release from custody); *cf. De Moura ex rel. Ferreira v. Warden, Broome Cnty. Corr. Facility*, No. 9:26-CV-449, 2026 WL 1705979, \*3 (N.D.N.Y. June 12, 2026) (finding that the petitioner's order of removal was final, and detention became

8

mandatory, because he did not appeal the order of removal); *Villa ex rel. Villa v. Warden, Broome Cnty. Corr. Facility*, No. 9:26-CV-397, 2026 WL 925828, *3-4 (N.D.N.Y. Apr. 6, 2026) (same).

Petitioner's private interest "'is the most significant liberty interest there is—the interest in being free from imprisonment.'" *Rashid v. Trump*, 807 F. Supp. 3d 349, 367 (D. Vt. 2025) (quoting *Velasco Lopez*, 978 F.3d at 851); *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Petitioner has been detained for several weeks and has a pending appeal of a removal order. This Court has previously noted that, "'[i]n the case of an appeal, . . . detention may stretch on indefinitely[,]' and as a result, 'the risk of an erroneous deprivation of liberty may become more egregious[.]'" *Martins*, No. 9:26-CV-95 (N.D.N.Y. Feb. 3, 2026), Dkt. No. 16, at 13 (quoting *Rashid*, 807 F. Supp. 3d at 365). The Court is cognizant of the risk that Petitioner will remain detained indefinitely as the appeal process wears on, but Respondents' letter does not discuss that risk.

There is also no indication that Petitioner received a pre-detention hearing, or any kind of individualized custody determination, before his sudden arrest. This Court recently recognized that "'§ 1226(a)'s implementing regulations require an individualized determination as to whether the detention of a noncitizen is appropriate after considering whether the noncitizen (1) is a "danger to property or persons" and (2) is "likely to appear for any future proceeding."'" *Parra v. Ball*, No. 9:26-CV-1162, 2026 WL 1960934, *4 (N.D.N.Y. June 30, 2026) (quoting *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 491 (E.D.N.Y. 2025)). The Court determines that Respondents "have not demonstrated, or even suggested, that any individualized determination was made as to whether Petitioner posed any risk of flight or danger before he was detained." *Id.* The record shows only that ICE arrested Petitioner during a traffic stop, citing the non-final order of removal (the appeal of which had been pending for eight months at the time Petitioner was arrested) and

an associated warrant, *see* Dkt. No. 7 at 2, 4; Dkt. Nos. 7-7, 7-10, (which Petitioner argues was issued *after* his arrest), *see* Dkt. No. 8 at 1-2.

Respondents have not shown why this arrest would have been justified without a warrant. Although the record does not definitively show what time the arrest occurred, it shows that the warrant was not signed until 11:54 A.M, *see* Dkt. No. 7-10 at 1, and was not served upon Petitioner until after the arrest, *see* Dkt. No. 7-9 at 2. "'ICE must obtain a warrant before arresting a noncitizen unless the officer "has reason to believe that the [noncitizen] is in the United States in violation of any such law or regulation *and* is likely to escape before a warrant can be obtained for his arrest."'" *Rea v. Ball*, No. 9:26-CV-1248, 2026 WL 1959270, *2 (N.D.N.Y. July 2, 2026) (quoting *Curimilma Quille v. Blanche*, No. 26-CV-2818, 2026 WL 1453889, *5 (E.D.N.Y. May 22, 2026)); *see also* 8 C.F.R. § 287.8(c)(2)(ii). Respondents have not argued that Petitioner tried to escape during the traffic stop or at any other time. Similarly, a DHS document states that Petitioner "was arrested" during the traffic stop and subsequently moved "to a secondary location," where he was then served with the warrant. Dkt. No. 7-9 at 2. Thereafter, according to the DHS document, he was moved to a sub-office in Malta, New York "without issue for further processing." *Id.* To the extent that the arrest may have occurred without a valid warrant, Respondents have not demonstrated the requisite justification for such conduct.

Regarding the Government's interests, "courts have recognized that 'detention in the immigration context "has two regulatory goals: ensuring the appearance of [noncitizens] at future immigration proceedings and preventing danger to the community."'" *Martins*, No. 9:26-CV-95 (N.D.N.Y. Feb. 3, 2026), Dkt. No. 16, at 14 (quoting *Rashid*, 807 F. Supp. 3d at 369; citing *Velasco Lopez*, 978 F.3d at 854). Respondents have not shown how Petitioner's detention furthers these goals. They have not argued that Petitioner poses a flight risk, and the record suggests the

opposite. Petitioner reported to an ICE office in 2022, as instructed, and was issued a notice to appear. *See* Dkt. No. 7 at 2; Dkt. No. 7-5. The Government then released Petitioner on an order of recognizance. *See* Dkt. No. 7 at 2; Dkt. No. 7-6. Moreover, the Government has not argued, nor provided any evidence to show, that Petitioner has a criminal history, poses a risk to the community, or jeopardizes national security.

Based on the foregoing, the Court finds Petitioner's detention is unjustified under § 1226's discretionary framework and violative of Petitioner's constitutional rights. *See Hernandez Villasmil*, 2026 WL 1235068, at *9; *Torrez Arce*, 2026 WL 1430509, at *4-6. Because Respondents have not offered any reason for Petitioner's detention—other than a questionable warrant and an order of removal that is not yet final due to Petitioner's timely appeal—the Court orders Petitioner's immediate release from custody. *See Hernandez Villasmil*, 2026 WL 1235068, at *9 ("As the Government has not presented a single reason why Petitioner should be detained— they have not argued nor presented any evidence that he is a danger to the community or a flight risk—and Petitioner has remained free in this country, working, law abiding, and waiting for his June 2027 immigration court hearing, immediate release is the appropriate remedy"); *Rea*, 2026 WL 1959270, at *4 (ordering immediate release where the petitioner was arrested without a warrant and the *Mathews* factors weighed against keeping the petitioner detained).

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, the Court hereby

**ORDERS** that Petitioner's petition for writ of habeas corpus (Dkt. No. 1) is **GRANTED**; and the Court further

**ORDERS** that Petitioner be immediately released from custody; and the Court further

**ORDERS** that Respondents certify compliance with the Court's order regarding Petitioner's release no later than Monday, July 13, 2026, at 5:00 P.M.; and the Court further

**ORDERS** that, having considered the particular circumstances of this case and *Mathews v. Eldridge*, 424 U.S. 319 (1976), Petitioner shall not be re-detained without adequate notice to Petitioner and without an opportunity to be heard at a hearing where the Government will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a) and the burden to demonstrate by clear and convincing evidence that Petitioner is either a danger to the community or a flight risk; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Petitioner's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  July 8, 2026
        Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

12